IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOIS GIORDANO, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 06-476 (JBS) |
| v. | |
| WACHOVIA SECURITIES, LLC <u>et al.</u>, | **OPINION** |
| Defendants. | |

APPEARANCES:

Mark R. Cuker, Esq.
Alan H. Sklarsky, Esq.
WILLIAMS, CUKER & BEREZOFSKY
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
     Attorneys for Plaintiff

Mark S. Melodia, Esq.
Paul J. Bond, Esq.
REED SMITH, LLP
136 Main Street
Princeton, NJ 08540
     Attorneys for Defendant Wachovia Securities, LLC

**SIMANDLE**, District Judge:

This case presents the interesting issue of whether a case, having been removed from State court to Federal court, in which the plaintiff lacks Article III standing to pursue her claim, should be dismissed in Federal court or remanded to State court. This matter, which was removed by Defendant from the Superior Court of New Jersey to this Court, is before the Court upon a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) filed on behalf of Defendant Wachovia Securities, LLC
("Wachovia").  This motion relates to Plaintiff Lois Giordano's
four-count complaint (the "Complaint") alleging (1) negligence, (2)
invasion of privacy, (3) breach of the duty of confidentiality, and
(4) conversion stemming from the loss of Plaintiff's personal and
financial information.  In short, the Court finds, as alleged by
Defendant itself, that Plaintiff has failed to allege that she
suffered an injury-in-fact and therefore has not met the
Constitutional requirements for standing in Federal court under
Article III.[1]  Having determined that Plaintiff did not fulfill the
minimal constitutional requirements for Federal court standing,
this Court lacks subject matter jurisdiction and cannot address the
merits and, under 28 U.S.C. § 1447(c), this Court shall (1) deny
Wachovia's motion to dismiss and (2) remand the case back to State
court.

I.   **BACKGROUND**

Plaintiff is Lois Giordano, a customer of Wachovia Securities,
LLC.  (Complaint at ¶¶ 1-2.)  As part of opening an individual
retirement account with Wachovia in June of 2004, Plaintiff signed
a New Account Application which stated that she agreed that the

---

[1]  In finding that Plaintiff lacks standing to bring any
claim against Wachovia, this Court need not address the other
arguments raised by Wachovia in its motion to dismiss.

2

account would be governed by Wachovia's "Customer Agreement."[2]  In connection with her account, Plaintiff provided Wachovia with certain information about her - including her name, address, and Social Security Number.  (Compl. at ¶ 1.)  In connection with the maintenance of Plaintiff's account, Wachovia generated an account number for Plaintiff's funds and kept track of her account balance. (Id.)

Approximately ten months after Plaintiff opened her account, Wachovia printed a report which contained financial information about Plaintiff and tens of thousands of other Wachovia customers. (Id. at ¶ 10, 13.)  On March 28, 2005, Wachovia mailed the report, via the United Parcel Service ("UPS"), to Wachovia's New Jersey branch office.  (Id.)  The package was never received.  (Id.)  In response to the loss of this package, Wachovia sent Plaintiff (and others) a letter informing her of the loss of her information and stating that Wachovia and UPS have "conduct[ed] a thorough and extensive investigation to locate the package, including interviewing all individuals who may have handled the missing packages and carefully reviewing the carrier's procedures and internal reports."  (Melodia Cert. ¶ 4, Ex. C.)  The letter

---

[2]  The Customer Agreement includes, among other things, a choice of law provision selecting Virginia's substantive law, a limitation of liability for acts of simple negligence by Defendant, and an exemption from liability for extraordinary events such as failure of the mails or theft.  (Certification of Mark S. Melodia ¶ 2, Ex. A.)

continued, stating that Wachovia "believe[s] the package was damaged during shipment and, pursuant to the carrier's procedures, was destroyed... [and that] [t]here is no evidence of theft of the report or your information...[or] that the report has been obtained by a third party." (Id.)  In the same letter, Wachovia offered to pay for a year of credit monitoring services, which Plaintiff accepted.  (Id.)

With Plaintiff's year of free credit monitoring services ending in July of 2006, Plaintiff filed a putative class action suit against Wachovia and UPS in New Jersey Superior Court (Atlantic County) on December 16, 2005. [Docket Item No. 1.] The Complaint alleges claims of negligence (Count I), invasion of privacy (Count II), breach of the duty of confidentiality (Count III) and conversion (Count IV). (Compl. ¶ 18-36.)  The Complaint seeks, among other remedies, that this Court order Wachovia to establish a credit monitoring program, at Wachovia's expense, "to ensure timely detection of any and all persons who attempt to use Plaintiff's information as a result of the carelessness and reckless conduct of [Wachovia]" or that Wachovia reimburse Plaintiff for such services.  (Compl. at 9.)

On February 1, 2006, the case was removed from the Superior Court of New Jersey, Law Division, Atlantic County, to this Court. [Docket Item No. 1.]  On February 21, 2006, Wachovia and UPS filed separate motions to dismiss Plaintiff's Complaint.  [Docket Item

Nos. 11 and 14, respectively.][3]  Plaintiff filed opposition to
Wachovia's motion on April 7, 2006 [Docket Item No. 23.] to which
Wachovia timely replied on April 14, 2006. [Docket Item No. 23.]
The Court heard oral argument on May 26, 2006.

## II.  <u>DISCUSSION</u>

        Wachovia makes three main arguments in support of its motion
to dismiss.  First, Wachovia argues that Plaintiff lacks the
constitutional standing to bring this action and therefore, the
action must be dismissed under Fed. R. Civ. P. 12(b)(1).  Second,
Wachovia argues that Plaintiff is precluded from these claims under
the limitation of liability provision of the Customer Agreement.
Finally, Wachovia argues that Plaintiff's claims of negligence,
invasion of privacy, breach of confidentiality and conversion all
fail because each claim lacks at least one essential element of the
cause of action.

    Because every litigant in the federal courts must have
standing to bring a claim sufficient to satisfy the "case or
controversy" requirement within the meaning of Article III of the
Constitution of the United States, this Court will first address
the issue of Plaintiff's standing.  A conclusion that Plaintiff
lacks standing moots the other arguments raised by Wachovia and

---

[3]  On May 24, 2006, Plaintiff and UPS entered into and filed
a Stipulation of Dismissal in which Plaintiff agreed to
voluntarily dismiss all claims against UPS, rendering the UPS
dismissal motion moot. [Docket Item No. 24.]

requires this Court to deny Wachovia's motion to dismiss and remand this case back to the state court from which it was removed.

**A.     Standard of Review under Fed R. Civ. P. 12(b)(1)**

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks dismissal due to the lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Before a federal court can consider the merits of a legal claim, "the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990); see also Petroleos Mexicanos Refinancion v. M/T KING, A (Ex-Tbilisi), 377 F.3d 329, 224 (3d Cir. 2004)("standing is a question of subject matter jurisdiction.")  Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties. U.S. CONST. art. III, § 2.  To satisfy Article III's standing requirements, a plaintiff must allege:

> (1) [an] injury in fact, which is an invasion of a
> legally protected interest that is (a) concrete and
> particularized, and (b) actual or imminent, not
> conjectural or hypothetical; (2) a causal connection
> between the injury and the conduct complained of; and (3)
> [that] it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a
> favorable decision.

Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 290-91 (3d Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  To establish an "injury in fact," a plaintiff must show that he has "sustained or is immediately in danger of

sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (citations and internal quotation marks omitted); see also Danvers Motor Co., 432 F.3d at 291.

The plaintiff bears the burden of establishing standing. See Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003).  The plaintiff must "clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements" in the Complaint, insofar as a federal court "is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Whitmore, 495 U.S. at 155-56. In determining standing, the Court must consider "the specific . . . constitutional claims that a party presents" and examine "a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." International Primate Prot. League v. Administrators of the Tulane Ed. Fund, 500 U.S. 72, 77 (1991).

   B.   **Analysis**

Wachovia argues that Plaintiff does not allege any actual or imminent injury-in-fact.  Rather, Plaintiff merely claims that she "will incur financial loss including the costs of obtaining credit and identity theft protection services in order to prevent"

identity theft.  (Compl. ¶ 1.)  Wachovia argues that Plaintiff can only recoup money she voluntarily chooses to spend to prevent identity theft in the event that the threat of identity theft is "so imminent as to be 'certainly impending.'"  <u>Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 122 (3d Cir. 1997).  According to Wachovia, because (1) there is no evidence that Plaintiff's confidential financial information had been stolen or that (2) a third-party intends to make unauthorized use of such information, theft of her identity (and thus, Plaintiff's injury) is not "certainly impending." (Def.'s Br. at 9-10.)

Plaintiff contends that Wachovia's argument overlooks important considerations and construes the injury-in-fact requirement under Article III too narrowly.  (Pl.'s Opp. Br. at 5.)  Indirect economic injury, according to Plaintiff, is "clearly a sufficient basis for standing." <u>San Diego County Gun Rights Comm'n v. Reno</u>, 98 F.3d 1121, 1130 (9th Cir. 2005); <u>The Pitt News v. Fisher</u>, 215 F.3d 354 (3d Cir. 2000)(student newspaper has standing to challenge a statute prohibiting businesses from running liquor ads in educational publication resulting in alleged loss of revenue to the newspaper).  Second, Plaintiff argues that a plaintiff need only plead that she has suffered "some concrete form of harm" to overcome a motion to dismiss. (Pl.'s Opp. Br. at 5.)  Specifically, "[a]t the pleading stage, general factual

allegations of injury resulting from defendant's conduct may suffice...."   (Id. citing Lujan, 504 U.S. at 561.)   Indeed, according to Plaintiff, the alleged harm need not be substantial, as a "trifle" of injury will suffice to satisfy the requirement of an injury-in-fact.   See Danvers Motor Co., 432 F.3d at 294. Against this background, Plaintiff contends, she has alleged sufficient facts to meet the injury-in-fact requirement. According to Plaintiff, her injury -- the likelihood that she will become a victim of identity theft -- is concrete and economic (i.e., the cost to protect against the long-term risks of harm created by Wachovia's conduct in permitting her personal identity and account information to be disbursed in an unsecured setting) and not speculative or abstract.[4]   (Id.)

---

[4]  Plaintiff also argues that New Jersey law recognizes the type of relief Plaintiff is seeking - compensation for credit monitoring services - because the New Jersey Supreme Court recognized compensability of medical monitoring services in Ayers v. Jackson Township, 106 N.J. 557 (1987).  New Jersey law, according to Plaintiff, has recognized such a cause of action for medical monitoring in the face of the same argument as Wachovia makes here - namely, that the probability that plaintiffs will actually become ill from their exposure to chemicals is too remote to warrant compensation under the principles of tort law. Id. at 591.

This Court finds Plaintiff's analogy of medical monitoring to credit monitoring inapt.  In order to have a cause of action for medical monitoring even before the advent of any physical symptoms, Plaintiff must allege exposure to a carcinogen, not the potential exposure.  See id. at 599-607; see also Theer v. Philip Carey Co., 133 N.J. 610, 627 (N.J. 1993).  Here, Plaintiff merely alleges the potential of identity theft, not that her identify was actually stolen and misused.

The Court concludes that Plaintiff lacks Constitutional standing to bring this action because Plaintiff has failed to allege that she suffered an injury-in-fact that was either "actual or imminent."  Plaintiff's allegations that, as a result of Wachovia's actions, she will incur costs associated with obtaining credit monitoring services in order to prevent identity theft simply does not rise to the level of creating a concrete and particularized injury.  Plaintiff's claims, at best, are speculative and hypothetical future injuries.  A complaint alleging the mere potential for an injury does not satisfy Plaintiff's burden to prove standing.  Instead, a plaintiff must allege an actual injury or that an injury is "so imminent as to be 'certainly impending.'"  <u>Magnesium Elektron, Inc.</u>, 132 F.3d at 122 ("The imminence requirement ensures that courts do not entertain suits based on speculative or hypothetical harms.")  Plaintiff has failed to do so here.

The mere possibility of future harm fails to satisfy the standing requirements of the Supreme Court and Third Circuit Court of Appeals.  For example, in <u>O'Shea v. Littleton</u>, 414 U.S. 488, 493-97 (1974) the plaintiffs alleged a pattern and practice by local officials of racial discrimination through higher bonds and harsher sentences for minorities and sought injunctive relief against the continuation of such practices.  The Supreme Court held that, although the plaintiffs belonged to the discriminated-

against class, "[n]one of the named plaintiffs [was] identified as himself having suffered any injury in the manner specified." Id. at 495.  The Court held that the possibility that county officials would act illegally in the future, and the further possibility that the named plaintiffs would be among the victims of such illegal action, were simply not enough to grant the plaintiffs Constitutional standing.  See id. at 497.  Like the plaintiffs in O'Shea, Plaintiff's allegations here, if true, create only the possibility that Plaintiff will be harmed at some future date by the loss of Plaintiff's information or through identity theft.

In addition, in City of Los Angeles v. Lyons, 461 U.S. 95, 97 (1983), the plaintiff sought injunctive relief after claiming to have been stopped by city police officers for a traffic violation, put in a chokehold and injured.  The Lyons plaintiff alleged that he "justifiably feared that any future contact he might have with police officers might again result in his being choked without provocation" and asked the court to bar the use of such tactics by the city's police.  Id.  The Supreme Court, overturning the injunction granted by the lower court, held that the plaintiff had no standing to sue and that the Court could not agree that the "odds" that the plaintiff will be subjected to a chokehold without provocation are sufficient to make out a federal case for equitable relief.  Id. at 108.  In the present case, Plaintiff's claims, like those of the plaintiff in Lyons are based on nothing

11

more than the chance - or "odds" - that she will be the victim of
wrongdoing at some unidentified point in the indefinite future.

Finally, in Luis v. Dennis, 751 F.2d 604, 608 (3d Cir. 1984),
the Third Circuit held that federal courts had no subject-matter
jurisdiction to exercise judicial review based on the mere
possibility that a challenged law would make (as-yet hypothetical)
executive appointments more difficult.  In such cases, the
"requisite immediacy and reality are lacking...."  Id.  There are
numerous parallels between the plaintiff's case in Luis and
Plaintiff's case here - as Plaintiff only alleges a potential
injury (identity theft) that is contingent on (1) Plaintiff's
information falling into the hands of an unauthorized person and
(2) that person using such information for unlawful purposes to
Plaintiff's detriment.  As in Luis, the indefinite and conjectural
nature of Plaintiff's alleged injury precludes this Court from
finding Article III standing.

The Court's decision is also in line with three recent
district court decisions involving claims of negligence and breach
of confidentiality brought in response to a third-party stealing
or unlawfully accessing personal or financial information from a
financial institution.  See Forbes v. Wells Fargo Bank, N.A., 420
F.Supp.2d 1018 (D. Minn. 2006); Guin v. Brazos Higher Educ. Serv.
Corp., Inc., 2006 WL 288483 (D. Minn. Feb. 7, 2006); Stollenwerk
v. Tri-West Healthcare Alliance, 2005 WL 2465906 (D. Ariz. Sept.

12

6, 2005).  In all three cases, the district courts rejected a plaintiff's argument that he or she was entitled to reimbursement for credit monitoring services or for the time and money he or she spent monitoring his credit.  Id.  In all three cases, the district courts has held that, because the plaintiff's injuries were solely the result of a perceived risk of future injury, plaintiff had failed to show a present injury or reasonably certain future injury to support damages for any alleged increased risk of harm.[5]  Id.

In this case, the risk is even more hypothetical than those of the plaintiffs in Forbes, Guin or Stollenwerk.  Here Plaintiff failed to allege even that her financial information was stolen or ended up in the possession of someone who might potentially misuse it.  (Compl. ¶¶ 13-14.)  Instead, Plaintiff's Complaint merely alleges that a version of her personal financial information was lost and conceded at oral argument that there is no evidence that the information was stolen.  (Transcript of Oral Argument, dated

_____

[5]  In Forbes, the court held that a plaintiff could not recover for loss of time spent monitoring his credit (in order to prevent damage from identity theft), but only lost earning capacity and wages because the plaintiffs' "expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized." 420 F.Supp.2d at 1021.  Thus, "plaintiffs' injuries [lost time and wages] are solely the result of a perceived risk of future harm...[and] hav[ing] shown no present injury or reasonably certain future injury to support damages for any alleged increased risk of harm...plaintiffs have failed to establish the essential element of damages."  Id.

13

5/26/06 at 16.)   As such, this Court will follow these recent
district court decisions in holding that Plaintiff lacks
Constitutional standing to bring this action.

### III. **CONCLUSION**

_____Having found that Plaintiff has failed to prove that she
suffered an injury-in-fact, this Court concludes that Plaintiff
lacks Constitutional standing to bring a claim against Wachovia.[6]
This Court's conclusion that Plaintiff lacks Constitutional
standing does not require the Court to dismiss the case, however,
"for a determination that there is no standing 'does not
extinguish a removed state court case.'" Wheeler v. Travelers Ins.
Co., 22 F.3d 534, 540 (3d Cir. 1994)(quoting Bradgate Assocs.,
Inc. v. Fellows, Reed & Assocs., Inc., 999 F.2d 745, 751 (3d Cir.
1993)).   Rather, having found lack of standing -- and thus lack of
subject matter jurisdiction -- this Court must remand this case to
state court.[7]   See Wheeler, 22 F.3d at 537 ("If a district court
finds that a Plaintiff in a removed case does not have standing,
it will remand the case to the state court.")   Ordering a remand

------------------------------------------------------------

[6]   In finding that Plaintiff lacks standing to bring any
claim against Wachovia, this Court need not discuss the other
arguments raised by Wachovia in its motion to dismiss.   These
issues are now moot.

[7]   In Racher v. GMAC Mortgage Corp. of Pa., 1996 U.S. Dist.
LEXIS 7187, * 11 (D.N.J. May 9, 1996), our sister court in the
District of New Jersey, addressing a very similar set of facts
and procedural posture, noted that "[i]t is somewhat ironic that
defendant, having removed this case in the first instance, now
argues that plaintiff lacks standing."

in this case is not a discretionary decision on the part of this Court but is mandatory under 28 U.S.C. § 1447(c) even if remanding the case to state court may be futile.[8]  See <u>Bromwell v. Michigan Mutual Ins. Co.</u>, 115 F.3d 208, 213 (3d Cir. 1997)(citing 28 U.S.C. § 1447(c).)  The accompanying Order for Remand will be entered.


**July 31, 2006**                               **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                United States District Judge

_____

[8]   The Third Circuit held that:

Upon a determination that a federal court lacks subject matter jurisdiction over a particular action, the plain language of 28 U.S.C. § 1447(c) mandates that the matter be remanded to the state court from which it was removed....  Section 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  The language of this section is mandatory -- once the federal court determines that it lacks jurisdiction, it must remand the case back to the appropriate state court.

<u>Bromwell</u>, 115 F.3d at 213 (citing <u>International Primate Protection League v. Administrators of Tulane Educ. Fund</u>, 500 U.S. 72, 87 (1991); <u>Maine Assoc. of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Srvs.</u>, 876 F.2d 1051, 1054 (1st Cir. 1989)(Breyer, J.))